UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERICKA A. MCGLOTHIN,

          Plaintiff,      **No. 1:17-cv-00776-MAT**

  -vs-                 **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,

               Defendant.

## INTRODUCTION

Erika A. McGlothin ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## PROCEDURAL STATUS

Plaintiff protectively filed her application for DIB on December 22, 2012, alleging disability beginning October 25, 2011. Administrative Transcript ("T.") 148-49. Plaintiff's application was initially denied on August 7, 2013, and she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). T. 99, 104-05.

At Plaintiff's request, a hearing was conducted on June 18, 2015, by the ALJ in Buffalo, New York, and Plaintiff appeared in person with counsel. A vocational expert ("VE") also testified. In a decision dated February 11, 2016, the ALJ found Plaintiff not disabled from October 25, 2011, through the date of the decision. T. 27. On June 12, 2017, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision thus became the final decision of the Commissioner subject to judicial review. T. 1-6. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. T. 19.

At step two, the ALJ found that Plaintiff suffers from the following severe impairments: lumbar degenerative disc disease, bilateral knee osteoarthritis, status post left shoulder rotator cuff repair, and migraines. T. 19; see 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ did not find Plaintiff's depression or alleged fibromyalgia to be "severe." T. 19-20; see 20 C.F.R. § 404.1522. The ALJ noted that although Plaintiff was taking Cymbalta for depression caused by pain, she was not receiving any

other mental health treatment. The ALJ also found that there was no evidence establishing fibromyalgia as a medically determinable impairment. T. 19-20.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ considered whether Plaintiff's conditions met or medically equaled Listings 1.02, 1.03, and 1.04. T. 20.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations: Plaintiff can lift and carry ten pounds occasionally and light items such as envelopes, folders, and small tools frequently; sit six hours in an eight-hour workday; stand and/or walk a total of two hours in an eight-hour workday, alternating after twenty minutes to sitting for ten minutes, and using a cane when walking or standing; occasionally climb stairs or ramps, but never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; occasionally reach overhead with her non-dominant left upper extremity, with no limitations regarding her right upper extremity; work in an environment with no more than a moderate

noise level and no exposure to hazards such as unprotected heights or moving machinery; and perform work that would allow her to be off-task for up to ten percent of the workday, in addition to customary breaks. T. 20.

At step four, based on the record and the testimony of the VE, the ALJ found that Plaintiff was able to perform her past relevant work as a Case Worker, a skilled, sedentary job as it is performed generally in the national economy. T. 25-26.

The ALJ conducted an alternative step five analysis and found that, based on the VE's testimony and Plaintiff's vocational profile and RFC, there are other jobs that exist in significant numbers in the national economy that she can perform. T. 26. The ALJ cited the representative occupations of Appointment Clerk and Telemarketer, both of which are unskilled jobs performed at the sedentary exertional level. Id. Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, from the onset date through the date of decision. T. 27.

## SCOPE OF REVIEW

A federal district court may set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see 42 U.S.C. § 405(g). The district court must accept the Commissioner's findings of fact, provided

that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

## DISCUSSION

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ (i) failed to evaluate seven of Plaintiff's medically determinable physical impairments at step two, (ii) relied on medical evidence that did not provide an assessment of essential functions for sedentary work, and (iii) relied on her own lay opinion to find highly specific limitations that were not supported by the medical evidence.

## I.  Failure to Evaluate Impairments at Step Two (Plaintiff's Point I)

Plaintiff contends that despite numerous medical records showing that she was diagnosed with and treated for left hip osteoarthritis, lateral epicondylitis, medial epicondylitis, right knee Baker's cyst, ulnar nerve lesion, ankle and foot

osteoarthritis, or myofascial syndrome, the ALJ failed to evaluate these impairments at step two and failed to clearly account for their functional effects for the remainder of the sequential. The Commissioner argues that any step two error was harmless because the ALJ sufficiently accounted for the functional effects of these impairments in assessing Plaintiff's RFC.

At the second step of the sequential analysis, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits the plaintiff's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c). The step-two severity standard "is *de minimis* and is intended only to screen out the very weakest cases." <u>McIntyre v. Colvin</u>, 758 F.3d 146, 151 (2d Cir. 2014)). An impairment is "not severe" if the medical evidence establishes only a slight abnormality or combination of slight abnormalities which do not significantly limit the claimant's ability to perform basic work-related activities. See SSR 85-28, 1985 WL 56856, *3-4 (S.S.A. Jan. 1, 1985). "Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered." <u>Id.</u> Thus, "when assessing the severity of whatever impairments an individual may have, the adjudicator must

assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone." Id.

Plaintiff argues that the ALJ committed error by failing to consider the following impairments at step-two: hip osteoarthritis, lateral epicondylitis, medial epicondylitis, left knee Baker's cyst,[1] ulnar nerve lesion, ankle and foot osteoarthritis, and myofascial syndrome. Plaintiff notes that these diagnoses were made by several of her treating physicians: pain management specialists Dr. Eugene Gosy and Dr. Nikita Dave; surgeon Dr. Timothy McGrath; and surgeon Dr. Nicholas Violante. Plaintiff asserts that these impairments, singly and in combination, caused more than slight abnormalities. Dkt. 9-1, p. 20 (citing T. 798, 804, 809, 813, 818, 822, 893-905, 907-19, 927-33, 935-40, 945-53, 963-65, 970, 978, 987).

Review of these records indicates that Plaintiff was diagnosed with these medical conditions and received a significant amount of treatment for them, including cortisone injections, various pain management modalities, physical therapy, and surgery. For instance, pain management specialist Dr. Dave

---

[1] Although Plaintiff refers to the right knee in her memorandum of law, it appears to be a typographical error since Plaintiff's recurrent Baker's cysts were on her left knee. She had swelling and pain in her right knee, and a Baker's cyst was suspected; however, it was not confirmed on diagnostic imaging.

diagnosed her with myofascial pain syndrome on June 11, 2014. T. 798. She had sharp shooting pain and spasms starting in the lower lumbar area and radiating down into her lower extremities; aggravating factors included walking, standing or sitting more than ten minutes, and reaching. See also T. 804, 809 (Dr. Dave reiterated diagnosis of myofascial pain syndrome on November 3, 2014); T. 813, 818, 822 (Dr. Gosy diagnosed myofascial pain syndrome on December 23, 2014; February 6, 2015; April 10, 2015). Plaintiff was treated for a left knee pain by Dr. Jason Matuszak at Excelsior Orthopaedics and was found to have a Baker's cyst which was injected and aspirated. T. 893. She returned to Dr. Matuszak complaining of shooting, sharp left hip pain on March 10, 2014, which began suddenly about two to three weeks previously and was aggravated by all types of movement. T. 896-97. Dr. Nicholas Violante suspected a labral tear. When Plaintiff saw Dr. Matuszak in follow-up for her left knee pain and left hip pain, she received injections in her hip bursa and hip joint, and her Baker's cyst was aspirated again. T. 901.

Plaintiff returned to Excelsior Orthopaedics for numbness and tingling in her feet and continued pain in her left shoulder (brachial plexus lesions) and left elbow (lateral epicondylitis) on March 26, 2014. She received a corticosteroid injection in her elbow, and Dr. Matuszak recommended a consult with a neurologist for her peripheral compression neuropathy. T. 905. Plaintiff had

some improvement in her left hip after the injection, but Dr. Violante stated on April 10, 2014, that she will eventually need a total hip arthroplasty. T. 912.

On May 7, 2014, Plaintiff returned to Dr. McGrath with continued pain in her left shoulder and left elbow; she received another corticosteroid injection in her shoulder. T. 915. The following day, she saw Dr. Violante for significant pain in the left hip following a lumbar spine injection; she was ambulating with a cane that day. T. 919.

Plaintiff ultimately had hip surgery performed by Dr. Violante in October 2014; while she was recovering from this, she developed a left foot cyst that caused continuous burning and soreness as well as numbness, tingling, swelling, and pain at night. T. 942. Dr. Hurley at Excelsior Orthopaedics referred her to Dr. Todd Lorenc to have the cyst aspirated and injected. T. 947. Plaintiff continued to have left elbow and left shoulder pain into December of 2014. T. 950. On December 2, 2014, she returned to her orthopedics practice complaining of shooting pain from her hips to her knees and burning/numbness down both legs into her feet. T. 951. Dr. Violante noted that Plaintiff's recovery from her hip surgery was "impeded by concurrent musculoskeletal issues." T. 965.

However, the ALJ did not mention any of these medical conditions at step two, despite the fact that they were medically

determinable impairments, diagnosed by acceptable medical sources, for which Plaintiff received ongoing treatment. The Commissioner argues that the ALJ properly considered them at later steps in the evaluation and cites various medical records to support this assertion. See Def.'s Mem. at 23-25 (citations to record omitted). However, this evidence was not discussed by the ALJ and therefore could not have supported the ALJ's findings. It is well settled that "[a] reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (quotation omitted).

The Commissioner also argues that any error was harmless since the ALJ proceeded through the remaining steps and stated that she considered all of Plaintiff's symptoms. Def.'s Mem. at 23-24 (citations omitted). The Second Circuit, in unpublished opinions and mainly in dicta, has applied a "specialized variant of harmless-error analysis," Snyder v. Colvin, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014), pursuant to which step two omissions can be harmless error where the ALJ identifies some severe impairments at step two, and then proceeds through sequential evaluation on the basis of combined effects of all impairments. Id. (citing Stanton v. Astrue, 370 F. App'x 231, 233 n. 1 (2d Cir. 2010) (unpublished opn.) (noting, in dictum, that there was no error in finding disc herniation non-severe

because ALJ did identify other severe claims at step two so that claim proceeded though the sequential evaluation process and all impairments were considered in combination); other citation omitted). Here, however, the Court cannot say that the combined effects of the omitted impairments were fully considered and factored into the subsequent RFC; the ALJ's assertion that she considered all of Plaintiff's symptoms is insufficient to enable meaningful review. E.g., Booker v. Astrue, No. 1:07-CV-646 GLS, 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) (remanding based on step two error). Since the Court cannot "confidently conclude that the same result would have been reached absent the error," Snyder, 2014 WL 3107962, the Court cannot say the error was harmless. Id. Remand is therefore required so that the ALJ can perform a new step two severity determination.

## II. Erroneous Reliance on Incomplete Medical Opinion and Substitution of Lay Opinion (Plaintiff's Points II and III)

Plaintiff also argues that the ALJ improperly formed a detailed RFC based on the opinion of consultative physician Dr. Donna Miller which did not specify any physical functional limitations. Relatedly, Plaintiff contends that the ALJ elevated her own lay opinion above those of the medical professionals.

In support of her RFC finding for sedentary work, the ALJ accorded significant weight to Dr. Miller's opinion. However, Dr. Miller failed to offer any opinion as to the essential

exertional and postural functions required to perform sedentary work. T. 754. During her examination, Dr. Miller noted twice that Plaintiff had undergone left shoulder surgery the day before and consequently could not perform left shoulder, elbow, or wrist range of motion exercises. In addition, Plaintiff exhibited limited ranges of motion in her lumbar spine and both hips. Id. Dr. Miller offered no opinions with regard to Plaintiff's ability to stand, walk, sit, push, pull, lift, carry, or perform manipulative or postural functions. T. 755. It is thus unclear how Dr. Miller's statement provides support for the ALJ's highly specific RFC formulation, much less a general conclusion that Plaintiff can perform all of the exertional and postural requirements of sedentary work. Moreover, the numerous physical impairments omitted from consideration step two all were diagnosed *after* Dr. Miller's consultative examination, rendering her opinion stale and unable to serve as substantial evidence. See Schuler v. Colvin, No. 5:13-CV-144 GLS, 2014 WL 2196029, at *3 (N.D.N.Y. May 22, 2014) (finding that medical review consultant "constitute substantial evidence for the ALJ's RFC determination because it is based on a stale examination") (citing Acevedo v. Astrue, No. 11 Civ. 8853, 2012 WL 4377323, at *16 (S.D.N.Y. Sept. 4, 2012) (noting that courts have found a lack of substantial evidence where an ALJ relies on an RFC assessment that was completed before a full medical history was

developed); <u>Pierce v. Astrue</u>, No. 09-CV-813, 2010 WL 6184871, at *5-6 (N.D.N.Y. July 26, 2010) (holding that the ALJ erred in relying on a treating source's opinion, where it was rendered nearly three years prior to the ALJ's decision, and, in the meantime, the evidence indicated that the claimant's condition may have worsened)).

It is well settled that judges are "not allowed to 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record." <u>Suide v. Astrue</u>, 371 F. App'x 684, 690 (7th Cir. 2010) (unpublished opn.) (quoting <u>Blakes v. Barnhart</u>, 331 F.3d 565, 570 (7th Cir. 2003)). Since this is not a case where the medical evidence shows only minor physical impairments, it was not a situation where the ALJ permissibly could render a common-sense judgment about functional capacity even without a physician's assessment. <u>Williams v. Berryhill</u>, No. 16-CV-283-FPG, 2017 WL 1370995, at *3-4 (W.D.N.Y. Apr. 17, 2017) (citation omitted). Remand is required to obtain an updated opinion from a consultative physician or other acceptable medical source regarding all of Plaintiff's exertional and postural limitations.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision contains legal error and is unsupported by substantial evidence. Therefore, it is reversed. Accordingly, Plaintiff's motion for judgment on the pleadings is granted to

the extent that the matter is remanded for further administrative proceedings consistent with this opinion. The Commissioner's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

      **SO ORDERED.**

                           S/Michael A. Telesca

                         _____
                         HONORABLE MICHAEL A. TELESCA
                         United States District Judge

Dated:      April 4, 2019
              Rochester, New York